UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Connie Lee | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Keith Wesley | Lawrence Heller |

**Proceedings:**   DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY
(Dkt. 53, Filed December 28, 2016)

DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (Dkt. 56, Filed December 30, 2016)

## I.    INTRODUCTION

On January 26, 2015, plaintiff Brighton Collectibles, LLC ("Brighton") filed a complaint against defendant Believe Productions, Inc. ("Believe"). The original complaint alleged one claim for Copyright Infringement pursuant to 17 U.S.C. § 101 et seq. The gravamen of plaintiff's claim is that defendant violated its copyright in a jewelry design by selling two pieces of jewelry that are substantially similar to Brighton's designs.

On August 30, 2016, the Court granted plaintiff leave to file a First Amended Complaint ("FAC"). Dkt. 38. On September 2, 2016, plaintiff filed the operative FAC. Dkt. 40. The FAC alleges two additional claims, namely, a claim for false designation of origin, pursuant to 15 U.S.C. § 1125(a), the Lanham Act, and a claim for common law unfair competition. The gravamen of plaintiff's second and third claims is that Believe marketed and promoted its infringing jewelry by incorporating photographs of Brighton's jewelry into the promotional materials for Believe's lower-quality jewelry.

The expert discovery cutoff was December 15, 2016. Plaintiff timely designated Robert Wunderlich and Margaret Campbell as experts. On December 28, 2016,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

defendant filed a motion to exclude testimony by Wunderlich and Campbell.  Dkt. 53 ("Evidentiary Motion").  On December 30, 2016, defendant filed a motion for partial summary judgment.  Dkt. 56 ("MSJ").  On January 9, 2017, plaintiff filed an opposition to the Evidentiary Motion, dkt. 71, and to the MSJ, dkt. 67.  On January 13, 2017, defendant filed a reply in support of each motion.  Dkt. 82, Evidentiary Mot. Reply; Dkt. 84, MSJ Reply.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    Brighton's Jewelry

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
| --- | --- | --- | --- |
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Brighton is a business that manufactures and sells accessories, including handbags, wallets, sunglasses, shoes, and jewelry. Brighton sells its products in over 180 of its own



Reno Heart Leverback Earrings          Reno Heart Bracelet          Reno Heart Necklace

retail stores, 4,000 retail boutiques owned by third parties, and on Brighton's website.[1] One particular collection of jewelry sold by Brighton incorporates a heart within a heart design, referred to by Brighton as the Reno Heart, and certain stylistic features which have been copyrighted by Brighton. The founder and CEO of Brighton, Jerry Kohl, avers that the Reno Heart design was developed by a full-time Brighton Designer, Michelle Calhoun, in 2006.[2] According to Kohl, Brighton sold nearly 200,000 "units of products" incorporating the Reno Heart designs. Kohl Decl. ¶ 20. Said sales generated "over $3 million in wholesale sales." Id. Three examples of Reno Heart Collection jewelry are pictured here:

Kohl Decl. Ex. E (formatted to appear side-by-side). Kohl further avers that Brighton has spent in excess of $100 million on marketing and advertising its products since its founding over 40 years ago. Kohl Decl. ¶¶ 2, 13.

### B.    Believe's Alleged Infringement

[1] Unless otherwise noted, the following background is undisputed and drawn from the parties' submissions in relation to Believe's MSJ.

[2] Brighton began selling jewelry with the Reno Heart design in July 2006. Brighton registered the design with the Copyright Office several years later. The Copyright registration for the Reno Heart design took effect on October 20, 2014.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|----------|-------------------------|------|------------------|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Believe is a company based out of Denver, Colorado.  Twice a year, Believe publishes product catalogues which are supplied to schools and parent-teacher associations.  The catalogues are used in student fundraisers.  Students solicit sales from the catalogues, after which Believe and the students' schools divide the earnings.

Plaintiff alleges that two products offered for sale in Believe's Fall 2014 catalogue and on Believe's website infringe upon plaintiff's copyrighted Reno Heart design.

  

FAC ¶ 17; Wesley Decl. ¶ 2.  Plaintiff avers that the alleged infringing products are substantially similar to the Reno Heart Earrings and Bracelet pictured above, but were lower quality and sold at a lower price than Brighton's actual products.  Kohl Decl. ¶ 23. Plaintiff further avers that, although Believe did not use the Brighton brand to market Believe's jewelry, Believe used photographs of Brighton's products to market its infringing products.  Id.  According to Brighton, a customer who saw a picture of the Brighton jewelry in Believe's catalogue and decided to purchase it would instead receive a different, lower-quality product from Believe.  Id.  For instance, according to plaintiff, pictured below are (1) the promotional image that appeared in Believe's Fall 2014 catalogue, (2) Brighton's Reno Heart Bracelet, and (3) the bracelet which Believe customers received if they purchased it from the catalogue:

(1)  Believe's Fall 2014         (2) Brighton's Reno        (3) Bracelet Sold By
     Catalogue Image                  Heart Bracelet                Believe

Wesley Decl. Ex. F (formatted to appear side-by-side).  Plaintiff has also offered close-up images of the above bracelet pendants:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

  

Id. (formatted to appear side-by-side).

Believe sold the allegedly infringing jewelry using its Fall 2014 catalogue, of which it distributed 695,403 catalogues nationwide. Wesley Decl. Ex. L at 2. Between July 1, 2014, and December 31, 2015, Believe sold 5,414 of the bracelets and 3,849 sets of the earrings at issue here. Wesley Decl. Ex. K. Believe sold the bracelet that allegedly infringed upon Brighton's Reno Heart design for $19.50, less than half the price of Brighton's Reno Heart bracelet. Wesley Decl. Exs. G, J. Believe sold the earrings that allegedly infringed for $14, also less than half the price of Brighton's analogous earrings. Id.

### C.    Plaintiff's Experts

Defendant's Evidentiary Motion seeks to exclude testimony by plaintiff's two experts, Robert Wunderlich and Margaret Campbell, regarding damages.

#### 1.    Wunderlich

Wunderlich holds an M.B.A. from UCLA and a Ph.D. in physics from Harvard University. He has worked for over 18 years in consulting, economic analysis, and financial analysis, including prior employment as a senior manager at Deloitte and Touche LLP. He is now a principal at Discovery Economics, a professional services firm that consults on economic, financial, and accounting issues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Plaintiff avers that Wunderlich will opine on three relevant issues, as explained in his expert report. First, Wunderlich has estimated the amount of profit Brighton would lose for any lost Reno Heart jewelry sales. See Dkt. 62 ("Wunderlich Report") at A1-A3. Second, Wunderlich estimates that between 2012 and 2015, customers who purchased an item of jewelry from a Brighton retail outlet also bought an additional 1.27 other items, on average. Id. In other words, it is Wunderlich's opinion that any lost Reno Heart sales from Brighton's retail outlets likely resulted in 1.27 other lost sales of other products. Therefore, according to Wunderlich, the number of lost Reno Heart retail sales should be multiplied by both 1.27 and by the average profit Brighton earns on the sale of other products to determine the amount of additional, incidental profits lost as a result of lost Reno Heart sales in retail stores. Third, Wunderlich states in his report that the Reno Heart jewelry sales trends "is consistent with what would be expected if Believe's sales of the alleged infringing products had resulted in lower Brighton sales of its Reno Heart jewelry line." Id. at 5.

### 2. Campbell

Campbell is a professor of marketing and the interim associate dean for graduate programs at the Leeds School of Business at the University of Colorado. She earned a Ph.D. in business from the Graduate School of Business at Stanford. Prior to becoming a professor at the University of Colorado, she was an assistant professor of marketing at the Anderson Graduate School of Management at the University of California, Los Angeles. She has also served as an editor on several academic journals on marketing.

Plaintiff avers that Campbell will opine regarding "the anticipated effects of knockoffs or imitation products on an authentic brand." Evidentiary Mot. Opp'n at 3. In her expert report, Campbell states that "there are several likely detrimental effects on Brighton from" the picture in Believe's catalogue, the pricing of Believe's similar jewelry, the parties' distribution of their respective products, and the quality of the actual jewelry. Evidentiary Mot. Ex. F ("Campbell Report") at 10-11. Campbell further states the "it is my expectation that at least some customers of the Believe products would be attracted to the Believe product because the customers believe that the confusingly similar product pictured in the catalog is the same as, or affiliated with, the authentic Bright brand." Id. Campbell further states that she "expect[s] that some consumers were likely to have been attracted to believe products because they believe that other consumers will perceive [the jewelry] to be the same as, or affiliated with the authentic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Brighton brand." Id.  Next, Campbell states that she would expect Believe's lower prices to negatively impact willingness to pay for Brighton products and for Believe's catalogues to cause confusion regarding the Brighton brand.  Id.  Finally, Campbell opined that "some consumers may have purchased the Believe product because of its confusing similarity to the Brighton product." Id. at 12.

III. **DEFENDANT'S MOTION TO EXLUDE PLAINTIFF'S EXPERT TESTIMONY**

A. **Legal Standard**

Federal Rule of Evidence 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999).  The district court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93).  When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004).  "[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.  The district court is not tasked with deciding whether the expert is right or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

wrong, just whether his testimony has substance such that it would be helpful to a jury." Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969–70 (9th Cir. 2013).

In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications—i.e., some special knowledge, skill, experience, training or education." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000). "Rule 702 contemplates a broad conception of expert qualifications." Hangarter, 373 F.3d at 1015. Defendant seeks to exclude testimony by Wunderlich and Campbell.

### B.    Wunderlich's Opinions

Believe does not challenge Wunderlich's qualifications to testify as an expert, nor does Believe focus its opposition to Wunderlich's testimony upon particular calculations. Believe challenges the assumptions, methods, and results underlying Wunderlich's opinion as to whether Believe's alleged infringement caused Brighton's to suffer loss of sales. Believe further challenges potential testimony by Wunderlich regarding a possible framework for estimating lost profits from total lost Reno Heart Collection retail sales. As discussed below, although Believe raises numerous ways in which Wunderlich's opinions may be impeached, the Court is not tasked with determining whether Wunderlich's assessments are right or wrong. Instead, the Court is called upon to determine whether Wunderlich's opinions are "unreliable nonsense" such that it would not be "helpful" to the jury's assessment of the facts in this case. See Alaska Rent-A-Car, Inc., 738 F.3d at 970. In general, Wunderlich's findings appear relevant and likely to aid the jury in evaluating damages.

### 1.    Sales Trends

Wunderlich has concluded that the sales trend in Brighton's Reno Heart Collection between July 1, 2014, and June 30, 2015, is consistent with its having been adversely affected by Believe's alleged infringement. To reach that opinion, Wunderlich calculated the total revenue from and number of units sold in Brighton's Reno Heart Collection between July 1, 2014, and June, 30, 2015, as well as in the year preceding Believe's alleged infringement. Wunderlich excluded from those calculations two Reno Heart Collection items because they were relatively new products, which, according to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Wunderlich, might be subject to different sales trends.[3]  Wunderlich calculated that the aggregate revenue of the remaining Reno Heart Collection jewelry items between July 1, 2014, and June 30, 2015, was 11 percent lower than it had been in the year preceding the alleged infringement.  Wunderlich made the same calculations for all jewelry other than the Reno Heart Collection and determined that Brighton's other jewelry revenue declined by 1.8 percent during the same period.  Wunderlich's calculations indicate an analogous trend if units sold is the measure rather than revenue.[4]  Therefore, based on Wunderlich's calculations and the timing of the alleged infringement, which allegedly began in July 2014, Wunderlich concluded that the larger decline in Reno Heart Collection relative to Brighton's other jewelry sales was what he would have expected to observe if Reno Heart Collection sales had been adversely affected by the alleged infringement.  Wunderlich estimates that if Brighton's Reno Heart Collection sales had behaved similarly to the rest of Brighton's jewelry collection, "Brighton would have sold 4,313 more units of Reno Heart jewelry than it actually did."  Id. at 5.

Defendant challenges the foregoing trend analysis on a number of bases.  First, defendant argues that the appropriate time period for comparison of sales data is July 1, 2014, to December 31, 2014, because, according to defendant, any alleged infringement ended prior to January 1, 2015.[5]  During his deposition, Wunderlich explained that he used a full-year of data, rather than the six month period proposed by defendant, in order to account for lingering effects upon Brighton's sales that might not have occurred

---

[3] It appears from Wunderlich's summary chart, that inclusion of the two excluded products would have exaggerated the negative sales trend he observed rather than mitigated it.  Wunderlich Report at B1 (noting a larger decline in sales of the excluded items).

[4] Wunderlich calculates that total units sold from the Reno Heart Collection declined by 11.4 percent whereas total units of other jewelry sold declined by 1.7 percent during the same period.

[5] Plaintiff presents evidence that the alleged infringement continued into, at least, January 2015.  Specifically, during his deposition, John Hammon, a Believe employee, appears to have acknowledged that an allegedly infringing product was still for sale on Believe's website on January 26, 2015, at or near the time this action was filed.  MSJ Opp'n Ex. P ("Hammon Depo") at 63:5-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

strictly during the period of alleged infringement. Wunderlich Depo. 17:9-17. Wunderlich has further explained that he chose one year in order to control for seasonal fluctuations in sales. Wunderlich's measurements do not appear to be so baseless that they would be of no help to a jury. Wunderlich and Campbell opine that Brighton's brand and customer goodwill may have been damaged by the alleged infringement and that such damage, if it occurred, would not be confined to the period of infringement. According to Wunderlich, many of Brighton's customers are repeat customers. Although defendant may cross-examine Wunderlich regarding the proper period of analysis, this objection does not provide a basis for excluding Wunderlich's assessment of the Reno Heart sales trends altogether.[6]

Next, Believe argues that Wunderlich failed to control for other conditions that may explain the underperformance of the Reno Heart Collection relative Brighton's other jewelry. Wunderlich has acknowledged as much during his deposition:

Q. But would you agree that the more stores that are selling . . . the more sales there would be whether they are company owned stores or whether they're independent stores that Brighton sells to?

A. It could. There are also other factors.

---

[6] Believe makes a related argument regarding whether Wunderlich should have evaluated the Reno Heart Collection as a whole or merely, as defendant argues, the Reno Heart Bracelet and Earring sales specifically. According to Believe's calculations, sales of the Reno Heart Earrings and Bracelet were higher during the six-month period from July 1, 2014, to December 31, 2014, than they had been in the same six-month period in 2013. See Evidentiary Mot. at fn. 4. Believe's calculations may provide a basis for challenging Wunderlich's testimony before the jury; however, as already discussed, Wunderlich has provided a reasonable basis for extending the period of analysis beyond December 31, 2014. Additionally, Believe is accused of infringing upon a copyright in the Reno Heart *design*, not a bracelet and earrings. Wunderlich appears to have evaluated only pieces of jewelry which used the Reno Heart design. Although Believe allegedly sold only infringing earrings and bracelets, defendant has not demonstrated that it would be improper to consider the effect Believe's alleged conduct may have had on sales of at least two other items in the Reno Heart Collection.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Q. What are those factors?

A. For example, there is how they are displayed.  It's not just in the store.  It's how it's displayed in the store.  It's what the sales people are tending to promote, it's the other products that are in the stores.

Q. Okay, did you do an analysis of any of those other factors?

A. No.

Q. And you didn't do an analysis of how many stores were selling during any particular period of time either the two allegedly infringed upon Reno Hearts or the whole Reno Heart line, correct?

A. That's correct.

Wunderlich Depo. 83:12-84:12.[7]  Wunderlich also acknowledged that aggregate sales may have been affected by changes in price or availability of product inventory, neither of which was controlled for in his assessment of the sales trends.  Id. at 143:11-144:5.[8]

Although there may "be some regressions so incomplete as to be inadmissible as irrelevant," Bickerstaff v. Vassar Coll., 196 F.3d 435, 449 (2d Cir. 1999), as amended on denial of reh'g (Dec. 22, 1999) (quoting Bazemore v. Friday, 478 U.S. 385, 400 n.10 (1986) (Brennan, J., concurring), "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility," Bazemore, 478 U.S. at 400 (Brennan, J.,

---

[7] Defendant, in error, appears to have omitted page 84 from the Wunderlich Deposition transcript among the exhibits it submitted.  The pagination of the transcript before the Court skips from page 83 to page 101.  See Mot. Ex. A.  Plaintiff does not object to the foregoing quotation as inaccurate.  Accordingly, for purposes of this motion, the Court relies, in part, upon the language quoted by Believe in its moving papers.

[8] As with page 84, defendant has omitted page 144 from the Wunderlich deposition transcript exhibit, but quotes in in its brief.  Accordingly, for purposes of this motion, the Court relies upon the quoted language in defendant's motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

concurring).  Courts, on occasion, reject expert testimony as irrelevant where the expert has inferred causation from data without controlling for what the court views as the most salient alternative explanations.  See e.g. United States v. Artero, 121 F.3d 1256, 1262 (9th Cir. 1997) (expert's opinion regarding discrimination in grand jury composition is irrelevant where the expert fails to control for which members of the population are eligible to be jurors).  However, the point at which an expert opinion becomes irrelevant is far from clear.  See United States v. Torres-Hernandez, 447 F.3d 699, 704 (9th Cir. 2006) (acknowledging an intra-circuit conflict regarding whether Artero was correctly decided).  At least one court has found certain expert testimony by Wunderlich to be inadmissible on this basis.  See Lloyd v. Conseco Fin. Corp., No. CV00-10452MMM(RNBX), 2001 WL 36097624, at *6 (C.D. Cal. Oct. 19, 2001) (Wunderlich's opinion in wrongful termination case irrelevant because he failed to control for salient variables).  However, "[a] statistical study is not inadmissible merely because it is unable to exclude all possible causal factors other than the one of interest." People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 111 F.3d 528, 537 (7th Cir. 1997).

In this case, Wunderlich might have controlled for other variables, which, as he acknowledges, might explain the apparent decline in some of the data after the alleged infringement.  However, Wunderlich's opinion is not so irrelevant as to be inadmissible. Wunderlich's failure to control for certain variables goes to the probativeness of his opinion, not its admissibility.  Although defendant argues that Wunderlich should have controlled for changes in price and the number of stores selling the Reno Heart Collection because said considerations are salient to Brighton's sales, it is impossible to discern which variables are *actually* most salient without having done a different analysis.  It may be that neither consideration affected Brighton's sales or that a different, surprising variable best explains the decline in Brighton's Reno Heart Collection sales.  See Milton Friedman, Essays in Positive Economics 32-33 (Chicago: Univ. of Chicago Press, 1966). Under the circumstances of this case, the appropriate weight to give Wunderlich's sales trend analysis is a question better left to the jury.[9]  Wunderlich controlled for certain

---

[9] As Nobel Prize winning economist Milton Friedman has explained:

the notion of a completely realistic theory is in part a straw man . . . [but w]hat is the criterion by which to judge whether a particular departure from realism is or is not acceptable? Why is it more 'unrealistic' in analyzing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

variables which he viewed as important such as seasonal variation in sales and whether certain products were new. Wunderlich did not control for others. The Court declines to exclude Wunderlich's testimony on this basis.

Lastly, defendant argues that Wunderlich intends to testify to the ultimate issue. Defendant appears to contend that the observation that the sales trend "is consistent with what would be expected if" defendant's sales had damaged Brighton's sales, Wunderlich Report at 2, invades the province of the jury. Defendant is incorrect. Whereas Wunderlich may not testify, "Believe caused Brighton to lose sales," which would invade the province of the jury, Wunderlich may testify to the trends in sales data which he observed and what one might otherwise expect to observe if Believe had caused injury to Brighton.

Based on the foregoing, the Court concludes that Wunderlich's opinion regarding the sales trend data is sufficiently reliable and relevant to be admissible.

### 2. Wunderlich's Lost Profit Framework

Although Wunderlich does not opine as to the actual number of Reno Heart Collection sales which Brighton may have lost, Wunderlich does offer an opinion as to an appropriate framework for calculating lost revenue from lost retail sales. Wunderlich does not offer an opinion as to how many retail sales may have been lost due to the alleged infringement, but avers that, if a jury were to determine said amount, his framework would guide the factfinder in estimating Brighton's lost revenue. Specifically, Wunderlich estimates that:

> Brighton has historically (from 2012-2015) averaged sales of approximately 2.27 units for each individual sales transaction at the retail level. In other words, for each transaction in which a customer buys an item of jewelry or

---

business behavior to neglect the magnitude of businessmen's costs than the color of their eyes? . . . Clearly it can only be known by comparing the effect on the discrepancy between actual and predicted behavior of taking the one factor or the other into account.

Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|----------|-------------------------|------|------------------|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

other product, the customer also buys on average an additional 1.27 units of Brighton products.

Wunderlich Report at 4. Wunderlich further estimated the lost profit per lost product sold using "the overall average sales price per unit, cost of goods per unit, and variable operating expenses for all Brighton products." Id. at 5. According to Wunderlich, once a factfinder determines the number of lost retail sales, they can use his framework to estimate lost profits by multiplying the number of lost sales and Wunderlich's estimates of lost revenue per sale, including both lost revenue on Reno Heart Collection items and other incidental purchases.

Defendant first argues that Wunderlich's framework is irrelevant because Wunderlich has failed to estimate the number of sales Brighton may have lost due to the alleged infringement. However, an expert is not required to testify to every element of a party's claim for their opinions to be admissible. Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 816 (9th Cir. 2014). Wunderlich's framework is relevant, not because it purports to offer a complete estimate of the damages in this case, but because it may enable the jury to translate a finding of lost sales into a dollar amount. Wunderlich's opinion appears to be that the jury should consider Brighton's potential loss of additional, incidental retail sales if fewer customers purchased Reno Heart products from Brighton retail stores. Defendant has not demonstrated that such an opinion is irrelevant to Brighton's damages. Wunderlich acknowledged during his deposition that he declined to precisely calculate the number of lost sales because he had "difficulty" coming up with an "unambiguous" way to calculate them. Wunderlich Depo. at 60:17-22. That acknowledgement does not render Wunderlich's opinions inadmissible.

Next, defendant argues that an analogous opinion, offered by Wunderlich, was rejected in Brighton Collectibles, Inc. v. RK Texas Leather Mfg., 923 F. Supp. 2d 1245, 1253 (S.D. Cal. 2013). However, in RK Texas Leather, the court reasonably rejected very different testimony. In RK Texas Leather, Brighton brought a copyright infringement claim against several handbag importers and distributors. Id. at 1249. Wunderlich estimated the number of bag sales made by the defendants and offered his unsupported opinion that each sale by the defendants correlated to a lost transaction for Brighton. Id. at 1253. Wunderlich further explained that each transaction cost Brighton the sale of 2.06 items. Id. The RK Texas Leather court excluded Wunderlich's opinion, not because he estimated incidental lost retail sales based on a calculable ratio, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. |

because Wunderlich assumed every infringing sale (whether to a distributor or retail customer) would have otherwise been a transaction at a Brighton retail store.  Id. at 1254 ("Wunderlich improperly equates Defendants' infringing sales with Brighton's own lost profits on a scale of 1:1 . . . [without] convincing evidence from a customer to support the calculation of lost profits by referencing the defendant's infringing sales").

In this case, Wunderlich has not attempted to equate defendant's sales with Brighton's lost sales.  Although Wunderlich has calculated the number of sales made by Believe, Wunderlich appears to have done so in order to calculate Believe's revenues as a result of the alleged infringement – a different form of damages.  The fact that Wunderlich estimated how many products a customer typically buys from a Brighton retail outlet in each case, the RK Texas Leather court did not reject his opinion on that basis.

Although defendant cites several other cases where Wunderlich's opinions were at least partially excluded, none appears to be analogous here.  See Stop StaringA Designs v. Tatyana, LLC, 625 F. App'x 328 (9th Cir. 2015) (affirming district court's decision to hold new trial on damages where Wunderlich testified beyond the scope of his expertise, his expert report, and the representations of counsel); Lloyd v. Conseco Fin. Corp., No. 00-cv-10452-MMM, 2001 WL 36097624 (C.D. Cal. Oct. 19, 2001) (wrongful termination suit wherein Wunderlich offered substantially different opinion and was permitted to testify to damages, but not causation); Parlour Enterprises, Inc. v. Kirin Grp., Inc., 61 Cal. Rptr. 3d 243, 251 (2007) (rejecting Wunderlich's opinions where they were based on unsupported documents prepared by one of the parties).  Defendant further relies upon the questions during oral argument before a panel of Ninth Circuit judges in Brighton v. Coldwater Creek, Inc, 09-55624 & 09-56038 (Consolidated) (January 13, 2011).  However, a judge's questions from the bench are not law and the issues on appeal in said case, like those above, were very different from Wunderlich's opinions here.  See Brighton Collectibles, Inc. v. Coldwater Creek Inc., No. 08-CV-2307-H POR, 2010 WL 3718859, at *10 (S.D. Cal. Sept. 20, 2010) (permitting Wunderlich to testify that Brighton lost one sale for each allegedly infringing sale).  Wunderlich appears to have testified as an expert approximately 150 times.  Wunderlich C.V. at 8-11.  Defendant does not challenge Wunderlich's qualifications, nor do the foregoing cases present similar questions to those here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

In light of the foregoing, Wunderlich's opinions in this case appear to be both relevant and reliable. They may be imperfect, but their weight should be determined by a jury. Accordingly, defendant's motion to exclude Wunderlich's opinions is **DENIED**.

### C.    Campbell's Opinions

Campbell's report first offers her general opinions regarding branding, marketing, and the adverse impacts that follow, generally, from competitors' sale of confusingly similar, lower-priced, lower-quality products. Campbell Report at 3-9. Next, Campbell describes her understanding of the facts as alleged in this case. Id. at 9-10. Campbell's summary of Believe's alleged conduct indicates that she considered Believe's marketing of its jewelry, Believe's alleged use of Brighton's jewelry to sell lower-quality products, and the relative prices of Believe and Brighton's jewelry. Id. Finally, Campbell describes the damages she would expect to follow from Believe's actions. Id. at 10-12. According to Campbell, the misleading marketing, lower prices, and lower quality, coupled with the similarity of Believe's jewelry "would likely" dilute the value of Brighton's brand and cost Brighton sales. Id. at 11. Defendant seeks to exclude all of the foregoing opinion testimony because, according to defendant, it is irrelevant and insufficiently connected to the facts and evidence in this case.[10]

Campbell's opinion is that Believe's alleged conduct here "*could* lead to harm to the authentic brand [Brighton] in a variety of ways," outlined in her report. Campbell Depo. at 70:19-24 (emphasis added). Campbell acknowledges that she has not reached a conclusion, nor does she have evidence, that Believe *did* cause damage to Brighton's sales. Id. 47:12-14. Defendant contends that this distinction is fatal to her opinions and makes them irrelevant.

---

[10] As an initial matter, the Court notes that, as with the Wunderlich deposition, defendant relies, in part, upon statements Campbell may have made during her deposition that have not been submitted to the Court in any form. In its motion, Believe cites page 41, lines 3-14 of the Campbell deposition, see Evidentiary Mot. at 22, but has neither quoted the passage nor submitted it to the Court. For purposes of the present motion, the Court assumes that said error is typographic and that defendant intended to refer the court to page 47, lines 3-14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Defendant is incorrect. Courts regularly permit marketing experts to testify to the role of branding, distinctiveness, and design in consumer behavior as well as what effects they would expect based upon the facts of any particular case. See e.g. Active Sports Lifestyle USA LLC v. Old Navy, LLC, No. SACV1200572JVSEX, 2013 WL 11239385, at *13 (C.D. Cal. Nov. 21, 2013) (opinion that plaintiff "could be viewed" in a way that would damage its brand is admissible); Adidas Am., Inc. v. Payless Shoesource, Inc., No. CV 01-1655-KI, 2008 WL 4279812, at *9 (D. Or. Sept. 12, 2008) (jury was permitted to rely upon experts' brand devaluation explanation without specific proof of actual harm); Bouygues Telecom, S.A. v. Tekelec, No. 4:05-CV-78-FL, 2007 WL 4699237, at *4 (E.D.N.C. Feb. 5, 2007) (Daubert motion denied because expert's opinion regarding injuries to brand and reputation was sufficiently relevant to damages).

Here, Campbell's opinion is sufficiently grounded in the evidence of this case. There is evidence suggesting Believe may have used images of Brighton jewelry to sell less-expensive, similar products. Campbell discusses those facts and plainly bases her opinions upon them. Defendant does not challenge Campbell's expertise regarding the study of brands and brand dilution. Campbell's application of her expertise to the facts of this case would be both relevant in helping the jury understand the possible effects that could follow from the alleged conduct. To the extent that defendant objects to Campbell's failure to conduct a consumer study consistent with practice in the field of marketing, said decision does not undermine the reliability of Campbell's opinion. Campbell's opinion is not that Believe's actions *did* cause damage to Brighton. Campbell's report states only that, based on her expertise in marketing and branding, she would expect certain injuries. These opinions appear to be sufficiently reliable and relevant to be admissible.

Defendant's motion to exclude Campbell's testimony is **DENIED**.

## IV. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**B.    Discussion**

Defendant seeks partial summary judgment with respect to plaintiff's potential recovery of actual damages, as opposed to disgorgement of profits. Defendant also seeks summary judgment with respect to plaintiff's unfair competition claim.

**1.    Brighton's Damages**

Defendant argues that it is entitled to summary judgment with respect to the absence of actual damages because, according to defendant, there is no evidence that its alleged infringement actually caused Brighton to lose any sales. Defendant argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

plaintiff's evidence of lost sales is too speculative to entitle plaintiff to recover damages from lost sales.

To recover damages from copyright infringement, "[a] plaintiff must prove both the fact and the amount of damage." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993).

Regarding entitlement to damages, the Ninth Circuit has indicated:

Other jurisdictions have made a distinction between the elements necessary to establish a legal basis for liability from those required for proof of damages. Although we recognize this distinction, nevertheless, an inability to show actual damages does not alone preclude a recovery under section 1117. In so holding, we express a distinct preference for those opinions permitting relief based on the totality of the circumstances.

Id. at 1410-11 (citations omitted). Thereafter, the court cited with approval cases determining that the *fact* of damages had been shown from evidence that advertising was actually misleading. Id. (citing e.g. PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc., 818 F.2d 266, 272 (2d Cir. 1987) ("The jury's conclusion that consumers actually were deceived by [defendant's] misrepresentations is supported by the false advertising contained on the record albums and the fact that [defendant] successfully sold the albums on the market")). Where a party's marketing is misleading, there may be "no need to require appellant to provide consumer surveys or reaction tests in order to prove entitlement to damages." PPX Enterprises, 818 F.2d at 272.

Regarding the amount of damages from lost profits, "a plaintiff must make a 'prima facie showing of reasonably forecast profits.'" Lindy Pen, 982 F.2d at 1407 (quoting 2 J.T. McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984)). Generally, an estimate of lost profits must be "reasonably certain." Id. To demonstrate that the amount of lost profits is "reasonably certain," a plaintiff need only provide, "a reasonable basis for computation." Id. Under some circumstances, there may be insufficient evidence regarding the amount of lost sales resulting from misleading advertising and copyright infringement to support a reasonable calculation of actual damages. Under those circumstances, plaintiff is not entitled to actual damages. See Hansen Beverage Co. v. Vital Pharm., Inc., No. 08-CV-1545-IEG (POR), 2010 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
| --- | --- | --- | --- |
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

3069690, at *7 (S.D. Cal. Aug. 3, 2010) (comparing evidence to that in Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 525 (10th Cir. 1987)).

Brunswick is instructive here. At issue in Brunswick was whether the plaintiff had put forth sufficient evidence to demonstrate both the fact of damages and evidence of the amount of damages. Brunswick Corp., 832 F.2d 513. In Brunswick, Spinit Reel Co. ("Spinit") was accused of selling spin-cast fishing rods that infringed upon the plaintiff's ("Zebco's") distinctive, metallic closed-face reel design. Id. at 515. The district court concluded that plaintiff had failed to "establish clear proof of damages." Id. at 525. The Tenth Circuit reversed. The Tenth Circuit found that the following was sufficient to establish actual damages:

> Brunswick submitted evidence that in the fiscal year ending July 1983 sales of all Zebco spin-cast products dropped off by five percent . . . [and] sales of spin-cast reels generally had decreased by six percent due to the recession. Sales for the [infringed reel], however, dropped sixteen percent . . . . Thus, the evidence does not indicate that Brunswick failed to show it suffered any actual damages.

Id. (citations omitted). The court went on to explain that the total number of infringing sales by the defendant "provides an upper range for an award of damages," and that:

> [t]he district court may also look to the difference in the decline of Model 33 sales as compared with the decline in sales of Zebco's other spin-cast reels. Those items of evidence provide the court a broad basis from which it may arrive at a fair, if not precise, amount with which to compensate Brunswick for wrongful infringement.

Id. at 526. On that basis, the Tenth Circuit reversed the district court, concluding that although damages could only be estimated, the evidence established reasonable bases for estimating lost sales.

In this case, plaintiff has offered very similar evidence to that offered in Brunswick. Accordingly, the Court reaches the same result. Although plaintiff does not present evidence that Brighton lost any particular sale due to Believe's alleged infringement, there is sufficient evidence from which a reasonable jury could conclude that Brighton suffered injury. Taking all reasonable inferences from the evidence in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

plaintiff's favor, there is evidence suggesting that Believe disseminated nearly 700,000 sales catalogues nationwide wherein Believe used photographs of Brighton products to sell similar, lower-quality jewelry for less than half the cost of Brighton's analogous Reno Heart products.  After Believe sold over 9,000 bracelets and earrings using photographs of Believe's copyrighted design, Reno Heart Collection sales declined at a higher rate than Brighton's other jewelry sales.  Based on the foregoing, there appears to be a material issue of disputed fact regarding entitlement to lost sales.  Furthermore, Wunderlich's Report includes a calculation of Believe's allegedly infringing sales, which "provides an upper range for an award of damages."  Id.  Lastly, Wunderlich estimates that Reno Heart Collection sales were 4,313 units lower than if the collection had performed similarly to Brighton's other jewelry and provides a framework for estimating lost revenues based on whatever number of sales may have been lost.[11]  The foregoing evidence provides a sufficiently reasonable basis for determining the amount of actual damages such that the Court cannot, at this time, conclude that Brighton's claim to actual damages does not present a material issue of disputed fact.[12]

---

[11] Defendant presents several challenges to Wunderlich's opinions, which the Court has already addressed above.  Although Wunderlich's opinions may be subject to reasonable cross-examination, the Court draws all reasonable inferences from the evidence in favor of the party resisting a motion for summary judgment.

[12] Defendant relies upon several cases wherein courts rejected claims to actual damages as too speculative to present a reasonable basis for actual damages.  None is analogous or controlling here.  See e.g. Hansen Beverage, 2010 WL 3069690, at *8 (S.D. Cal. Aug. 3, 2010) (damages could not be attributed to defendant's false advertising because many other non-party competitors used the same false advertising); McClaran v. Plastic Indus., Inc., 97 F.3d 347, 357 (9th Cir. 1996) (jury's award of lost royalties was too speculative under Tennessee law because expert's estimate was based on assumption that defendant could produce and sell more than was possible in its existing facility); Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 505 (7th Cir. 1992) (rejecting court's award of $1,000,000 for "corrective advertising" where it was based on defendant's advertising budget rather than plaintiff's injury and also rejecting $100,000 lost sales award as "rank speculation" about sales of product without "any track record of sales").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

Accordingly, with respect to Brighton's alleged actual damages, Believe's motion for partial summary judgment is **DENIED**.

### 2.    Plaintiff's Unfair Competition Claim

Plaintiff argues that because Believe used photographs of Brighton jewelry in its marketing for its own jewelry, Believe may be liable for common law unfair competition. Defendant argues that it is entitled to summary judgment regarding plaintiff's unfair competition claim because the claim is preempted by the Copyright Act.

"A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act. 17 U.S.C. § 301(a); 1 Nimmer, § 1.01[B] at 1–11. Second, the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. Id." Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998). The Copyright Act entitles a copyright holder to have the exclusive rights of reproduction, preparation of derivative works, distribution, and display. 17 U.S.C. § 106. Therefore, "[t]o survive preemption, . . . The state claim[s] must have an 'extra element' which changes the nature of the action." Del Madera Props. v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987) (citations omitted). Allegations of palming, or passing, off are not preempted by the Copyright Act. See Warner Bros. Inc. v. Am. Broad. Companies, Inc., 720 F.2d 231, 247 (2d Cir. 1983) ("to the extent that plaintiffs are relying on state unfair competition law to allege a tort of 'passing off,' they are not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption"); Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1216 (E.D. Cal. 2004) (same).

Although defendant acknowledges that palming off claims are not preempted by the Copyright Act, defendant argues that plaintiff's claim is reverse palming off, which would be preempted by the Copyright Act. "Implied passing off involves the use of a competitor's advertising material, *or a sample or photograph of the competitor's product*, to impliedly represent that the product being sold is made by the competitor." Lamothe v. Atl. Recording Corp., 847 F.2d 1403, 1406 (9th Cir. 1988) (emphasis added).

[R]everse passing off occurs when one party purchases or otherwise obtains a second party's goods, removes the second party's name, and then markets

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIVBLE, LLC V. BELIEVE PRODUCTION, INC. | | |

the product under its own name.  A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name.

Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc., 7 F.3d 1434, 1437 (9th Cir. 1993) (quotation marks and citations omitted).

Plaintiff does not allege that defendant actually obtained genuine Reno Heart Collection bracelets and earrings and sold them under its own name.  Such allegations would constitute reverse palming off and would be preempted by the Copyright Act. Aagard, 344 F. Supp. 2d at 1216.  Plaintiff's unfair competition claim is based upon Believe's alleged use of photographs of Reno Heart Collection jewelry such that consumers would be confused as to the origin of the pictured jewelry and assume the Reno Heart jewelry pictured was being made and sold by Believe.  Plaintiff does not allege that Believe actually sold Reno Heart Collection jewelry under another name. Brighton alleges quite the opposite – that Believe's sales of lower-quality, but confusingly similar products using pictures of Brighton products gave them an unfair advantage in the marketplace and constituted unfair competition.  Accordingly, plaintiff alleges implied palming off.  Such a claim is not preempted by the Copyright Act.

Defendant's motion for summary judgment with respect to plaintiff's claim for unfair competition is **DENIED**.

## V.  CONCLUSION

In accordance with the foregoing, defendant's motion to exclude plaintiff's expert testimony is **DENIED**.

Defendant's motion for partial summary judgment is also **DENIED**.

IT IS SO ORDERED.

|  | 00 | 19 |
|---|---|---|
| Initials of Preparer | | CL |