UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Connie Lee | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Peter Ross | Lawrence Heller |
| Keith Wesley | Shula Roth-Barash |

**Proceedings:** PRETRIAL CONFERENCE

DEFENDANT'S MOTIONS IN LIMINE 1-3 (Filed January 9, 2017, Dkt. 64-66)

PLAINTIFF'S MOTIONS IN LIMINE 1-2 (Filed January 9, 2017, Dkt. 70, 72)

## I. INTRODUCTION

On January 26, 2015, plaintiff Brighton Collectibles, LLC ("Brighton") filed a complaint against defendant Believe Productions, Inc. ("Believe"). The original complaint alleged one claim for Copyright Infringement pursuant to 17 U.S.C. § 101 et seq. The gravamen of plaintiff's copyright infringement claim is that defendant sold bracelets and earrings that infringed upon plaintiff's copyright in a particular jewelry pendant design.

On August 30, 2016, the Court granted plaintiff leave to file a First Amended Complaint ("FAC"). Dkt. 38. On September 2, 2016, plaintiff filed the operative FAC. Dkt. 40. The FAC alleges two additional claims, namely, a claim for false designation of origin, pursuant to 15 U.S.C. § 1125(a) ("the Lanham Act"), and a claim for common law unfair competition. The gravamen of plaintiff's second and third claims is that Believe marketed and promoted its infringing jewelry by incorporating photographs of Brighton's jewelry into the promotional materials for Believe's lower-quality products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

On January 9, 2017, defendant filed three motions in limine. Dkt. 64-66. On the same day, plaintiff filed two motions in limine. Dkt. 70, 72. On January 13, 2017, plaintiff filed its opposition to each of defendant's motions in limine. Dkt. 75-77. On the same day, defendant filed an opposition to plaintiff's first motion in limine, dkt. 85, and a notice of non-opposition to plaintiff's second motion in limine, dkt. 83.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the following background is undisputed.

Brighton is a business that manufactures and sells accessories, including handbags, wallets, sunglasses, shoes, and jewelry. Brighton sells its products in over 180 of its own retail stores, 4,000 retail boutiques owned by third parties, and on Brighton's website. One particular collection of jewelry sold by Brighton incorporates a heart within a heart design and certain stylistic features which have been copyrighted by Brighton. Brighton refers to its copyrighted heart-within-a-heart design as the Reno Heart. The founder and CEO of Brighton, Jerry Kohl, avers that the Reno Heart design was developed by a full-time Brighton Designer, Michelle Calhoun, in 2006. According to Kohl, Brighton has sold nearly 200,000 "units of products" incorporating the Reno Heart design. Kohl Decl. ¶ 20. Said sales generated "over $3 million in wholesale sales." Id. Kohl further avers that Brighton has spent in excess of $100 million on marketing and advertising its products since its founding over 40 years ago. Kohl Decl. ¶¶ 2, 13.

Believe is a company based in Denver, Colorado. Twice a year, Believe publishes product catalogues which are supplied to schools and parent-teacher associations. The catalogues are used in student fundraisers. Students solicit sales from the catalogues, after which Believe and the students' schools divide the earnings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

    Plaintiff alleges that two products offered for sale in Believe's Fall 2014 catalogue and on Believe's website infringe upon plaintiff's copyrighted Reno Heart design. FAC ¶ 17; Wesley Decl. ¶ 2. Specifically, plaintiff alleges that Believe sells an infringing bracelet ("the copycat bracelet") and earrings ("the copycat earrings"). Plaintiff avers that the alleged infringing bracelet and earrings are substantially similar to Brighton's jewelry, but are lower quality and sold at a lower price than Brighton's actual products. Kohl Decl. ¶ 23. Plaintiff further alleges that, although Believe did not use the

  

Brighton brand to market Believe's jewelry, Believe used photographs of Brighton's products to market its infringing products. Id. According to Brighton, a customer who saw a picture of the Brighton jewelry in Believe's catalogue and decided to purchase it would instead receive a different, lower-quality product from Believe. Id. For instance, according to plaintiff, pictured below are (1) the promotional image that appeared in Believe's Fall 2014 catalogue, (2) Brighton's Reno Heart Bracelet, and (3) the copycat bracelet Believe customers received if they purchased it from the catalogue:

(1) Believe's Fall 2014 Catalogue Image     (2) Brighton's Reno Heart Bracelet     (3) Alleged Copycat Bracelet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

Wesley Decl. Ex. F (formatted to appear side-by-side). Plaintiff has also offered close-up images of the above bracelet pendants:

  

Id. (formatted to appear side-by-side).

Believe sold the allegedly infringing jewelry using its Fall 2014 catalogue, of which it distributed 695,403 catalogues nationwide. Wesley Decl. Ex. L at 2. Between July 1, 2014, and December 31, 2015, Believe sold 5,414 of the bracelets and 3,849 sets of the earrings at issue here. Wesley Decl. Ex. K. Believe sold the bracelet that allegedly infringed upon Brighton's Reno Heart design for $19.50, less than half the price of Brighton's Reno Heart bracelet. Wesley Decl. Exs. G, J. Believe sold the earrings that allegedly infringed for $14, also less than half the price of Brighton's analogous earrings. Id.

### III.   DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF FROM DESCRIBING DEFENDANT'S PRODUCTS AS "SIMILAR" TO PLAINTIFF'S

Defendant's first motion in limine seeks to prevent plaintiff's counsel and witnesses from referring to the Believe jewelry design as "similar" to Brighton's copyrighted design. Defendant contends that plaintiff's copyrighted design is entitled to only "thin" copyright protection because it relies upon common, unprotectable design elements. Therefore, according to defendant, plaintiff must demonstrate that defendant's allegedly infringing products are "virtually identical" to Brighton's Reno Heart design. Defendant argues that the use of the words "similar" and "alike" to describe its jewelry would cause unfair prejudice by confusing the jury as to the appropriate standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

Defendant is incorrect.

> If there's a wide range of [possible] expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe.

Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913–14 (9th Cir. 2010), as amended on denial of reh'g (Oct. 21, 2010) (citations omitted). Where an artist combines design elements into one design, among "endless variations of expression," the artist's contribution is afforded broad copyright protections. McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 321 (9th Cir. 1987).

Defendant offers evidence that heart symbols and silver filigree are not, standing alone, protectable design features in silver jewelry because they have each been used for centuries in jewelry design. However, that does not mean that this action, should it proceed to trial, is governed by the "virtually identical" standard. There are myriad ways in which to combine heart shapes, filigree, dots, and pave crystals. See Zapata Depo. 18:22-19:21 (acknowledging that there are "thousands" of ways to design heart jewelry). The Reno Heart design is one such expression. Plaintiff may demonstrate infringement by presenting evidence of substantial similarity between Believe's jewelry and the original elements of plaintiff's Reno Heart design. Although not every element in the Reno Heart design is original (for instance, the Court has little trouble concluding that a generic heart shape is an unprotected feature, considered in isolation), the overall expression and combination of elements in the Reno Heart design is nonetheless entitled to broad Copyright protection. See e.g. L.A. Printex, 676 F.3d at 851 (substantially similar standard governs fabric design infringement because there are "gazillions" of ways to combine "petals, buds, stems, leaves, and colors in floral designs on fabric").

"Substantially similar" is a term of art insofar as the jury is limited to consideration of a work's original elements. It may therefore be misunderstood by a layperson. See Mattel, 616 F.3d at 916 ("When works of art share an idea, they'll often be 'similar' in the layman's sense of the term"). However, that alone does not require the Court to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

preclude use of the words "similar" or "alike." The jury will be instructed as to the elements of copyright infringement, including the appropriate test for comparing two designs. See e.g. Ninth Circuit Model Civil Jury Instructions Nos. 17.17 (evidence of access as well as substantial similarities may show infringement) & 17.19 ("The Committee recommends that the court and counsel specifically craft instructions on substantial similarity based on the particular work(s) at issue").

In accordance with the foregoing, defendant's first motion in limine is **DENIED**.

### IV. DEFENDANT'S MOTION TO PRECLUDE SHOWING ENTIRE RENO HEART BRACELET TO THE JURY

Defendant's second motion in limine seeks to prevent plaintiff from showing the jury the entire Reno Heart bracelet. Defendant argues that only the Reno Heart design is copyrighted and that the Reno Heart design is only used on the pendant to Brighton's Reno Heart bracelet. According to defendant, showing the entire bracelet to the jury would result in unfair prejudice because the jury might infer copyright infringement from unprotected elements of the bracelet, namely, the bracelet band.

Plaintiff argues that the appearance of the entire Reno Heart bracelet is relevant to, at least, its Lanham Act claim and common law unfair competition claims. The Court agrees. Plaintiff's common law unfair competition and Lanham Act claims stem from the allegation that Believe used pictures of Brighton's entire Reno Heart bracelet in order to market Believe's copycat bracelet. The Fall 2014 catalogue page at issue includes an image of an entire bracelet. The jury may consider the appearance of the entire Reno Heart bracelet in order to determine whether the bracelet picture in the Fall 2014 catalogue is actually a picture of Brighton's Reno Heart bracelet.

Accordingly, defendant's second motion in limine is **DENIED**.[1]

---

[1] Although not itself registered for copyright protection, the Reno Heart bracelet band is also relevant to plaintiff's copyright claim. Any similarities between the copycat bracelet and Reno Heart bracelet may be circumstantial evidence of willful copying of the entire Reno Heart bracelet, including the copyrighted Reno Heart design. The willfulness of defendant's alleged infringement is relevant to damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

**V. DEFENDANT'S MOTION TO EXCLUDE AN INSTANT MESSAGING CONVERSATION WITH BELIEVE CUSTOMER SERVICE**

Defendant's third motion in limine seeks to exclude any reference to Believe's conduct as being "willful." Defendant also seeks to exclude a specific piece of evidence, namely, the text of an internet chat between a former Brighton employee and a Believe customer service representative.

The internet chat at issue appears to have been initiated by a former Brighton employee, Jennifer Apodaca, on September 8, 2014. Dkt. 67-2 Ex. I ("Apodaca Decl.") ¶¶ 1-2. Apodaca communicated with a customer service representative from Believe named Yurivel.[2] Id. After the conversation, Apodaca emailed a transcript of the conversation to a colleague at Brighton, which Apodaca has stated is a true and correct copy of what was said. Id.; see also Apodaca Decl. Ex. A ("Internet Chat Transcript"). The transcript states:

Yurivel: Hi, how can I help you today?

[Apodaca]: Hi there! I have a question regarding an item on your site

Numerous courts have held that the calculation of profits to be disgorged is affected by whether or not the infringement was "willful, conscious, or deliberate." Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 515 (9th Cir. 1985); see also Kamar Int'l, Inc. v. Russ Berrie & Co., 752 F.2d 1326, 1331 (9th Cir. 1984) (citing Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939), aff'd, 309 U.S. 390, 60 S. Ct. 681, 84 L. Ed. 825 (1940)). Specifically, if the infringement is willful, defendant's indirect costs (overhead) may not be deductible from its infringing sales revenue when calculating the amount to be disgorged. Id.

Accordingly, the Reno Heart bracelet band appears to be relevant to all three of plaintiff's claims.

---

[2] The Court cannot discern whether Yurivel's full name is known to the parties. The employee's name appears to have been gleaned from a transcript of the internet conversation wherein the employee is listed only as "Yurivel."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

| | |
|---|---|
| Yurivel: | Sure – Go ahead |
| [Apodaca]: | #2727<br>it is the triple strand heart bracelet |
| Yurivel: | I'm on that page… |
| [Apodaca]: | I see that it is a Brighton bracelet correct? |
| Yurivel: | Not officially – it's very similar in style, but not name brand "BRIGHTON"<br>It's actually a BELIEVE EXCLUSIVE item |
| [Apodaca]: | The photo that you are showing is of an authentic Brighton bracelet, it does have the signature Brighton "B" on the hanging heart |
| Yurivel: | It stands for Believe…It's made to look similar, but we do not carry Brighton products. Any jewelry we carry is made exclusively for Believe Kids.<br>The brand is Mivita. |
| [Apodaca]: | Thank you! |
| Yurivel: | You're welcome – Anything else I can help with today? |
| [Apodaca]: | Yes,<br>well I am a bit concerned because the photo you display on your site is an authentic bracelet and the "B" with a hanging heart like this is a trademark owned by Brighton |
| Yurivel: | I understand your concern. I have passed on all of the information I have on this product to you. Please feel free to contact a member of management at 877-723-5438 x215 if you have any further questions regarding this item. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

[Apodaca]: Thank you!

Yurivel: Not a problem at all. Have a great day! :)

[Apodaca]: thank you! You as well

Id.

As an initial matter, insofar as defendant argues that willfulness is not relevant to plaintiff's claims, defendant appears to seek untimely summary judgment with respect to certain types of damages. Although the parties appear to agree that plaintiff may not seek statutory damages, willfulness appears to be relevant to damages in this action.[3] Insofar as defendant appears to seek to limit plaintiff's claims after the summary judgment deadline has passed, the Court declines to evaluate plaintiff's entitlement to certain forms of damages and the extent to which plaintiff may be able to demonstrate willfulness.

Defendant further objects to the admission of the internet chat on other bases. First, Believe argues that Brighton failed to make any witness available during discovery with personal knowledge of the internet chat such that they could authenticate it.[4] However, Apodaca is no longer a Brighton employee. Apodaca Decl. ¶ 1. Believe's decision not to subpoena her or otherwise investigate the authenticity of the chat transcript does not appear to provide a basis for the exclusion of the evidence at issue.

Next, defendant argues that the exhibit is not self-authenticating and therefore cannot be admitted without foundation. However, plaintiff does not seek to admit the internet chat transcript as a self-authenticating document. Brighton avers that Apodaca's

---

[3] Pursuant to plaintiff's common law unfair competition claim, plaintiff may be entitled to punitive damages if plaintiff proves an "intentional misrepresentation." Duncan v. Stuetzle, 76 F.3d 1480, 1490 (9th Cir. 1996). Accordingly, evidence probative of defendant's intent is relevant to plaintiff's claims.

[4] Defendant does not dispute that Apodaca's email with the chat transcript was produced during discovery in October 2015.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

declaration should be sufficient to authenticate the exhibit and that, in any event, Brighton has designated Apodaca as a witness for trial if her testimony is necessary.

Finally, defendant argues that the statements in the chat transcript are inadmissible hearsay. Apodaca's declaration appears to be sufficient evidence to demonstrate that the chat transcript email "is what the proponent claims it is." Fed. R. Evid. 901. However, it is insufficient to establish that the statements are not hearsay. See Fed. R. Evid. 801. Admittedly, most of the conversation would not be offered for the truth of the matter asserted. For instance, Brighton would not be offering any of Apodaca's statements for their truth, but rather for their effect upon Believe's employee and as foundation for the employee's responses. Such statements are not considered hearsay and are therefore admissible. See Fed. R. Evid. 801(c)(2).

However, several statements made by Yurivel are being offered for their truth. For instance, plaintiff offers the statement "It's made to look similar," in order to prove exactly what Yurivel said, that Believe sold the copycat jewelry because it was similar to Brighton's Reno Heart collection. Brighton argues that these statements are not hearsay because they were made by the opposing party's representative. If that is the case, they are admissible pursuant to Rule 801(d)(2)(A). However, plaintiff, as the proponent of the statements' admission must lay appropriate foundation demonstrating that Yurivel's statements were made within the scope of Yurivel's purported employment at Believe.

Regarding the necessary foundation, Rhodes v. Wells Fargo Bank, N.A., No. 3:10-CV-02347-L, 2013 WL 2090307 (N.D. Tex. May 14, 2013), is instructive. In Rhodes, the plaintiff sought to admit statements purportedly made by Wells Fargo customer service agents over the phone. Id. at *6. However, plaintiff's only evidence regarding the statements was an affidavit in which he alleged the customer service representatives' first names and that "he contacted Wells Fargo and was told" certain things, not relevant here. Id. Plaintiff argued that "it is reasonable to assume that a customer is speaking with an agent or employee of [defendant] when he telephones a customer service line or a phone number listed on a bill or on a lender's website." Id. at *7. However, in that case, plaintiff failed to specifically state in his affidavit:

> that he telephoned Wells Fargo's customer service line or a number listed on his bill or Wells Fargo's website. Thus, the assumption or inference advocated by Plaintiffs [was] not supported by the record.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

Id. The Rhodes court explained, "without additional information, the court cannot reasonably infer that the alleged statements were made by agents or employees of Wells Fargo on a matter within the scope of that relationship and while it existed," as required by Rule 802(d)(2)(D). Id. Accordingly, the court concluded that appropriate foundation had not been laid for the admission of the customer service representatives' statements.

Similarly, here, Apodaca's declaration is insufficient to demonstrate who Apodaca spoke with and under what circumstances. It may be that the circumstances under which Apodaca contacted Yurivel are sufficient to infer that Yurivel spoke as Believe's representative; however, additional foundation is necessary. Apodaca's statement, "I participated in an online chat with a customer service representative of 'Believe Kids,'" Apodaca Decl. ¶ 2, is insufficient foundation for purposes of Rule 802(d)(2)(D). Accordingly, the Court cannot, at this time, discern whether Yurivel's statements fall within the meaning of Rule 802(d)(2)(D).

Although defendant's arguments against the admission of the chat transcript are without merit, plaintiff must lay further foundation before the chat transcript may be admitted. Accordingly, the Court reserves ruling as to whether or not the chat transcript contains inadmissible hearsay.

## VI. PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S SURVEY EVIDENCE

Believe intends to offer expert testimony by Dr. Joseph Nunes regarding damages. Nunes' opinions rely, in part, upon a survey he designed and conducted online ("the Nunes Survey"). Plaintiff argues that the design of the Nunes Survey was so flawed as to render its results irrelevant and therefore inadmissible.

The Nunes Survey was a survey conducted online through an online crowdsourcing marketplace run by Amazon, which Nunes avers is commonly used in marketing research. Mot. Ex. C at 5. The survey had 732 participants, all of whom were women. Id. All of the participants were shown the page of Believe's Fall 2014 catalogue at issue in this case.[5] Participants were told "The image you are looking at is a page from

---

[5] During his deposition, Nunes stated that the survey was also relevant to "whether or not consumers would be confused into believing the Believe products came from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

The Believe Kids fall/winter 2014 catalog. We would like you to focus on jewelry items #2727 and #2749. After looking at these items please answer the questions that follow." Mot. Ex. B. Participants were divided into two groups of approximately equal size. Both groups were asked the same questions:

> Who is the manufacturer and what is the brand of the Triple Strand Heart Bracelet (item #2727)?
>
> Who is the manufacturer and what is the brand of the Jeweled Heart Earrings (#2749)?

Id. One group was permitted to type their own answers into a blank space. The other was asked to choose from among a list of 16 purported manufacturers/brands. In both circumstances the respondents were permitted to answer that they did not know the brand.

Where participants were permitted to type their own answers, 70-71 percent answered that the brand was Mivita (which appeared on the Fall 2014 catalogue page participants were shown), 21 percent appear to have answered based upon "the products'

Brighton." Mot. Ex. A ("Nunes Depo.") at 31:5-8. Nunes, in his expert report, states that he conducted an online survey "to secure empirical evidence regarding whether the Triple Strand Heart Bracelet and Jeweled Heart Earrings are well known Brighton branded products." Mot. Ex. C at 5.

It is unclear whether Nunes is of the opinion that the images in the Fall 2014 catalogue are, in fact, pictures of Brighton's jewelry rather than jewelry manufactured by Believe. As described in Nunes' report, the Nunes Survey appears to have been premised upon the assumption that the images in the Fall 2014 catalogue are of Brighton's jewelry. If they are not, then it is unclear how Nunes' survey is probative of whether Brighton's products are well known. If the pictures in the Fall 2014 catalogue are not of Brighton products and, as Believe contends, its jewelry is not substantially similar to Brighton's, then participants in the Nunes Survey were not shown any images of Brighton jewelry or jewelry substantially similar to Brighton's.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

Spanish descriptors",[6] and 3 percent answered Believe Kids. Mot. Ex. C at 6. Nunes' report states that approximately 1.5 percent of participants named outside brands and that only one participant answered "Brighton." Id.

Where participants were asked to choose from a list of brands, including Mivita and Brighton, 73 percent answered Mivita, 22 percent responded that they did not know the brand, two chose Brighton for the bracelet, and four chose Brighton for the earrings.

Plaintiff argues that, contrary to Nunes' description of the survey, it did not test whether the Reno Heart bracelet and earrings "are well known Brighton branded products" because other content, such as the word "Mivita," on the 2014 Fall catalogue page suggested an answer. According to plaintiff, the suggested answers led respondents to answer differently than they would have if they had been shown only the Reno Heart design jewelry. Additionally, plaintiff argues the survey failed to properly screen participants because few of the respondents were familiar with Brighton. In sum, plaintiff argues that "[b]y testing the wrong thing and the wrong people, the survey is inherently irrelevant and unreliable." Dkt. 73 at 5.

Defendant, in response, argues that the survey is relevant to several issues. First, according to defendant, the Nunes Survey is probative of whether Brighton's goodwill was damaged as a result of catalogue purchases of the copycat jewelry in issue. Next, Believe argues that the Nunes Survey tests consumer confusion, which is at issue in plaintiff's Lanham Act and unfair competition claims.

Courts "have long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1036 (9th Cir. 2010) (quoting Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir.1997)). "Technical inadequacies" bear upon the appropriate weight of the survey evidence, not its admissibility. Id.

---

[6] The products are described in the catalogue as "Pulsera De Corazon" and "Aretes De Corazon" respectively. Because the parties do not appear to have submitted the survey response data in its entirety, it is unclear what answers led Nunes to conclude participants had relied upon the foregoing Spanish descriptors in their answers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

Here, the Nunes Survey is relevant to plaintiff's alleged damages from consumer confusion. In support of its unfair competition and Lanham Act claims, plaintiff alleges that consumers were confused about the origin of the jewelry for sale in Believe's Fall 2014 catalogue. Plaintiff asserts that customers who purchased the copycat jewelry from the Fall 2014 catalogue did so believing they were buying Brighton jewelry. FAC ¶¶ 35-37. According to Brighton, its goodwill was injured when Believe customers received lower-quality copycat jewelry instead of authentic Brighton jewelry. Id. ¶ 39; 43. Said theory of damages depends upon customers associating the jewelry from the Fall 2014 catalogue with Brighton. Therefore, whether Nunes Survey respondents identify Brighton as the manufacturer of the jewelry pictured in the Fall 2014 catalogue is probative of damages to plaintiff's goodwill.

Additionally, the Nunes Survey appears to have been conducted according to accepted principles. Even if the survey is not perfectly designed, there does not appear to be a basis for its exclusion. See Fortune Dynamics, 618 F.3d at 1037 (survey showing possible consumer confusion was admissible even though it "may have been suggestive"). "[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury or, in a bench trial, the judge." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001).

Accordingly, the Nunes Survey appears to be admissible at trial, where it will be subject to cross-examination. Plaintiff's first motion in limine is **DENIED**.

### VII. PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE SUGGESTING PLAINTIFF COPIED OTHER DESIGNS NOT AT ISSUE HERE

Brighton seeks to exclude allegations that Brighton designs not at issue here were copied from third-parties' designs. Defendant does not oppose plaintiff's motion and agrees "that it will neither mention nor attempt to submit evidence of allegations that Brighton copied someone else when creating a Brighton design that is not at issue in this case." Dkt. 83. Accordingly, plaintiff's second motion in limine is **GRANTED**.

### VIII. CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-00579-CAS (ASx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BRIGHTON COLLECTIBLES, LLC V. BELIEVE PRODUCTION, INC. | | |

Defendant's first and second motions in limine are **DENIED**. The Court reserves ruling on defendant's third motion in limine until it is clear whether plaintiff can lay foundation demonstrating that it is not hearsay.

Plaintiff's first motion in limine, to exclude the Nunes Survey results, is **DENIED**. Plaintiff's second motion in limine is **GRANTED**.

The Court hereby continues the Jury Trial from March 7, 2017, to **April 18, 2017 at 9:30 A.M.**

IT IS SO ORDERED.

|  | 00 | 04 |
|---|---|---|
| Initials of Preparer | | CL |